**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
ANTHONY CORBIN, EVA CORBIN, and
NICOLE CORBIN,

                              Plaintiffs,

                              **REPORT & RECOMMENDATION**

           - against -                     10-CV-3156 (NGG) (RER)

STANLEY EUSTACE WILSON, individually
and d/b/a THE LAW OFFICES OF STANLEY
WILSON and d/b/a S & W EMPOWERED, LLC

                              Defendant.
-----------------------------------------------------------X

**RAMON E. REYES, JR., U.S.M.J.:**

      Anthony Corbin ("Anthony"), Eva Corbin ("Eva"), and Nicole Corbin ("Nicole") (collectively, "plaintiffs") brought this action against Stanley Eustace Wilson individually and doing business as The Law Offices of Stanley Wilson and also doing business as S&W Empowered, LLC ("Wilson") seeking damages under the New York Deceptive Practices Act, General Business Law § 349 ("GBL § 349"), common law fraudulent inducement and concealment, conversion, breach of fiduciary duty, unjust enrichment, and negligent misrepresentation. Upon Wilson's failure to answer or otherwise appear in this action, plaintiffs brought this motion for default judgment on November 23, 2010. (Dkt. No. 5.) The Honorable Nicholas G. Garaufis referred the matter to me for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Dkt. Entry, 7/7/2011.) For the reasons that follow, I respectfully recommend default judgment be entered against Wilson, and plaintiffs be awarded damages in the amount of $348,000.

## FACTS

In 2004, Wilson, having recently received his New York Real Estate Brokers License and admission to the New York State Bar, approached Nicole regarding certain real estate investments. (Compl. ¶ 10.) From 2004 through 2006, Wilson arranged for Nicole, Anthony, and Eva to purchase investment properties in Brooklyn and Queens, but as it later turned out, Wilson had no legal or contractual right to sell these properties. (Compl. ¶¶ 12-13.) Title to the properties was never transferred to plaintiffs' names, despite promissory notes and mortgage obligations in their names for these properties. (Compl. ¶ 14.) Wilson represented to plaintiffs that these investment properties could be sold at plaintiffs' whim; however, given the lack of proper title, plaintiffs never had the right to sell the properties. (Compl. ¶ 15.) The properties went into foreclosure in 2007 and 2008. (*Id.*)

In February 2006, Wilson persuaded Anthony to refinance his home for capital to invest in another property. (Compl. ¶ 16.) Wilson also stole the equity from another property that was in Anthony's name, which ultimately forced Anthony to request a deed-in-lieu of foreclosure. (Compl. ¶ 20.) Anthony was forced to pursue bankruptcy protection as a result of yet another of these properties, as a result of Wilson's theft and fraud. (Compl. ¶ 21.)

In their Affidavit of Damages, plaintiffs claimed a total of $174,000 in money paid to Wilson for the various real estate ventures: (1) $50,500 on May 30, 2006 to S&W Empowered LLC; (2) $49,500 on May 30, 2006 to Angela Johnson, Wilson's purported employee/title closer; (3) $20,000 on July 31, 2006 to S&W Empowered LLC; (4) $14,000 on August 16, 2006 to Christopher Humbert, Wilson's associate; and (5) $40,000 on June 27, 2006 to attorneys Herbert

Tepfer and Samuel Leibowitz at Wilson's direction. (*See* Affidavit of Damages ¶¶ 4-5, Exhs. A-D.)[1]

Plaintiffs seek a total of $355,500, which includes $174,000 in actual damages and $7500 in attorney's fees under GBL § 349, as well as $174,000 in punitive damages under their common law fraudulent inducement and concealment claim. (*See* Letter from Jeffrey Benjamin, dated July 28, 2011.)

## DISCUSSION

**I.     Liability**

Upon a defendant's default, all of the well-pleaded allegations in the complaint pertaining to liability are deemed true. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). It is, however, for the court to determine whether such factual allegations establish the defaulting defendant's liability as a matter of law. *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) (noting that once a default has been entered a district court "need not agree that the alleged facts constitute a valid cause of action"); *Mktg. Devs., Ltd. v. Genesis Imp. & Exp., Inc.*, No. 08-CV-3168, 2009 WL 4929419, at *2 (E.D.N.Y. Oct. 6, 2009) ("[J]ust because a party

---

[1] Plaintiffs submitted a second Affidavit of Damages on July 29, 2011 that claimed only a total of $104,500 given to Wilson. This affidavit, unlike the first, has a notary seal. (Dkt. No. 7.) The first affidavit, however, would have been sufficient on its own since the plaintiffs signed it "under penalty of perjury." *See* 28 U.S.C. § 1746. Since the first affidavit not only referenced total payments made to Wilson, but also detailed dates of payment, the circumstances surrounding payment, and incorporated checks and receipts for these amounts, I will rely solely on the first affidavit. Moreover, I note that the only difference is in the total amount given to Wilson—the first is more comprehensive than the second in its inclusion of evidence and circumstances surrounding issuance of the checks.

is in default, the plaintiff is not entitled to a default judgment as a matter of right."). Here, plaintiffs seek to hold Wilson liable for violating GBL § 349 and for common law fraud.[2]

A.   GBL § 349

GBL § 349 makes deceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in New York unlawful, and permits a private cause of action by an individual injured by such deceptive acts or practices. GBL § 349 (a), (h). To establish liability, a plaintiff must show: "first that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." *Lonner v. Simon Prop. Group, Inc.*, 57 A.D.3d 100, 110 (2d Dep't 2008).

GBL § 349 was intended to protect consumers—in other words, "those who purchase goods and services for personal, family or household use." *Sheth v. New York Life Ins. Co.*, 273 A.D.2d 72, 73 (1st Dep't 2000). Although to establish that a practice was "consumer-oriented" the plaintiff need not allege that defendant engaged in the complained-of conduct repeatedly, the plaintiff must show "that the acts or practices have a broader impact on consumers at large." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995). Accordingly, private contract disputes or other disputes unique to the parties do not constitute "consumer-oriented" activity, precluding liability pursuant to GBL § 349. *Id.* "In

---

[2] This Court has jurisdiction over these state law claims pursuant to 28 U.S.C. § 1332 (a)(1), since there is diversity of citizenship (all plaintiffs are New York citizens and defendant is a New Jersey citizen), and the amount in controversy well exceeds the minimum requirement of $75,000. Additionally, and as mentioned above, plaintiffs asserted myriad common law claims; however, since in their inquest submissions plaintiffs seek only to recover damages under GBL § 349 and common law fraud, I will only address liability under these two theories.

other words, the deceptive act or practice may not be limited to just the parties." *Teller v. Bill Hayes, Ltd.*, 213 A.D.2d 141, 145 (2d Dep't 1995); *see Int'l Sport Divers Ass'n, Inc. v. Marine Midland Bank, N.A.*, 25 F. Supp. 2d 101, 114 (E.D.N.Y. 1998) ("The plaintiff must . . . plead and prove injury to the public generally, not just to himself.").

Plaintiffs allege that defendant's conduct was directed at the general public of defendant's clients, had a broad impact on consumers of defendant's real estate transactions at large, and was not "unique" to the parties. (Compl. ¶ 29.) Yet, the facts alleged do not support the conclusion that the complained-of conduct is consumer-oriented. Merely alleging that conduct was aimed at the general public is not sufficient to state a cause of action. *See Fleurentin v. McDowell*, No. 05-CV-4274, 2009 WL 2969686, at *6 (E.D.N.Y. Sept. 16, 2009) (finding upon defendant's default that plaintiff failed to establish "consumer-oriented" activity where despite broad allegations that defendant participated in schemes to defraud the public, plaintiff failed to state with any particularity how the public was injured).

Furthermore, plaintiffs' statements that the conduct had a "broad impact" on consumers and was not "unique" to the parties do not constitute well-pleaded allegations that must be deemed true upon default. Plaintiffs' statement of the conduct's "broad impact" is merely conclusory language that parrots decisions of the New York Court of Appeals. *See DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) (finding allegations that "parrot" statutory language are not well-pleaded allegations of fact, but rather conclusions of law); *BH99 Realty, LLC v. Qian Wen Li*, No. 10–CV–0693, 2011 WL 1841530, *3 (E.D.N.Y. Mar. 16, 2011), *adopted by* 2011 WL 1838568 (E.D.N.Y. May 13, 2011) ("[A] default does not establish conclusory allegations[.]"); *Rolls-Royce PLC v. Rolls-Royce USA, Inc.*, 688 F. Supp. 2d 150, 153

(E.D.N.Y. 2010) ("[A] party in default does not admit conclusions of law."). This statement no more clearly alleges how the public was injured than allegations that a defendant participated in schemes designed to defraud the public. Plaintiffs' statement that the conduct was not unique to the parties is belied by the rest of the factual allegations. *See Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 63 (2d Cir. 1971), *rev'd on other grounds*, 409 U.S. 363 (1973) ("[A]n allegation made indefinite or erroneous by other allegations in the same complaint is not a well-pleaded allegation.").

Setting this statement aside, the factual allegations actually described transactions unique to plaintiffs and Wilson—akin to a private contract dispute. The gravamen of the complaint is that Wilson pitched various real estate investment ventures directly to plaintiffs, and induced them to invest by making false and misleading representations about the properties, plaintiffs' control over those properties, and plaintiffs' ability to obtain return on those investments. *See, e.g.*, *Brooks v. Key Trust Co. Nat'l Ass'n*, 26 A.D.3d 628, 630-31 (3d Dep't 2006) (affirming dismissal for failure to state a claim under GBL § 349 where plaintiff's allegations established that the transactions concerned acquiring consumer loans, but where the remaining allegations evinced inducement to invest with advice directly to plaintiffs).

Moreover, the real estate transactions described in the complaint, like securities transactions, were undertaken as investments, not purchased as goods or services to be consumed or used, and so fall outside of the statute's protection. *See, e.g.*, *Gray v. Seaboard Sec., Inc.*, 14 A.D.3d 852, 853 (3d Dep't 2005) (explaining that the purchase of securities is not "consumer-oriented" because unlike typical consumer products "such as vehicles, appliances or groceries . . . securities are purchased as investments, not as goods to be 'consumed' or 'used.'"); *Lynch v.*

*McQueen*, 309 A.D.2d 790, 792 (2d Dep't 2003) (finding plaintiff failed to state a claim under GBL § 349 where a stockbroker/licensed insurance agent convinced plaintiff to transfer financial instruments to defendants to manage, and to purchase life insurance policies since this conduct was not "consumer-oriented or 'part of a pattern directed at the public generally'"). Accordingly, plaintiffs have failed to plead sufficient allegations to establish liability under GBL § 349.

  B. <u>Fraudulent Inducement and Concealment</u>

Under New York common law, a plaintiff must show four elements to establish liability for fraudulent concealment and/or inducement: (1) failure to discharge a duty to disclose or making a false representation of material fact; (2) an intention to defraud, or scienter; (3) reliance; and (4) damages. *TVT Records v. Island Def Jam Music Group*, 412 F.3d 82, 90-91 (2d Cir. 2005); *Firefly Equities LLC v. Ultimate Combustion Co.*, Inc., No. 10 Civ. 1868, 2010 WL 5174358, at *3 (S.D.N.Y. Dec. 14, 2010); *see also Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421 (1996).

Here, plaintiffs allege that Wilson knowingly misrepresented plaintiffs' rights with regard to the investment properties. Specifically, plaintiffs assert that Wilson told them they would have the right to sell the property at any time. (Compl. ¶ 15.) However, since Wilson accepted their money and put their names on mortgage documents and promissory notes, but never transferred the deeds into plaintiffs' names, they in fact never had any right to sell these properties. (Compl. ¶ 14.) Plaintiffs bore all of the risk, but no rights. As a licensed real estate broker and attorney, knowledge can be imputed to Wilson that failure to put the deeds in plaintiffs' name would preclude them from having the rights to sell the properties. From this

7

knowledge, and his alleged conduct with respect to the properties (*i.e.*, stealing equity), it can be inferred that he made these misrepresentations to defraud plaintiffs.

Plaintiffs' allege that Wilson held himself out as a licensed broker and attorney, and so plaintiffs' reliance on his representations that the properties would be under their control was reasonable. (Compl. ¶ 10.) Plaintiffs relied on these representations in continuing to put money into Wilson's real estate investment properties, and to supply him with their information to obtain mortgage documents for the purchase of these properties. Plaintiffs allege that Wilson then used this information to steal equity from the properties, and cause plaintiffs' financial loss and ruin. (Compl. ¶¶ 16, 20-23.)

Plaintiffs allegations establish that Wilson knowingly mislead them in order to gain their trust, money, and cooperation in various real estate investments, then stole the equity from these properties, and left plaintiffs without their initial capital and with only foreclosures and ruined credit.[3] Accordingly, plaintiffs have established Wilson's liability for fraudulent concealment and inducement.

## II. <u>Damages</u>

While a defendant's default is deemed to constitute an admission of all well-pleaded allegations pertaining to liability, it does not constitute an admission of allegations pertaining to damages. *Lyons P'ship, L.P. v. D & L Amusement & Entm't, Inc.*, 702 F. Supp. 2d 104, 111 (E.D.N.Y. 2010) ("A defendant's default is an admission of all well-pleaded factual allegations

---

[3] Plaintiffs make a number of vague allegations regarding various misrepresentations purportedly made by Wilson with respect to all of these properties. (*See* Compl. ¶ 26(a)-(j).) Given the confusing and vague nature of these allegations, I considered Wilson's liability with reference to the clear, factual allegations made in paragraphs 10 through 22 that ultimately support the fraudulent inducement and concealment claim.

in the complaint except those relating to damages."); *see also Greyhound*, 973 F.2d at 158. The court must ensure that there is a factual basis for the damages sought, and may do so either by conducting a hearing or relying on affidavits and other documentary evidence. *See* FED. R. CIV. P. 55(b); *Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997). Here, plaintiffs have submitted an affidavit and copies of the checks issued to and at Wilson's request. Wilson failed to submit any kind of response. Since neither party has requested a hearing, and since plaintiffs have provided sufficient documentary evidence from which to determine damages, a hearing is not necessary.

Under their fraud claim, plaintiffs may recover actual and punitive damages (under certain circumstances), but not attorney's fees. *See Coopers & Lybrand v. Levitt*, 52 A.D.2d 493, 496 (1st Dep't 1976) (explaining that in the absence of statutory authority or contractual agreement, attorney's fees are generally not recoverable).[4] Therefore initially, I respectfully recommend that plaintiffs' request for attorney's fees be denied.

Thus, all that remains is for the Court to consider the proof submitted to establish plaintiffs' actual damages, and also whether Wilson's conduct warrants punitive damages. In their affidavit, plaintiffs explained that Wilson had them issue a number of checks in the spring and summer of 2006 to his business, S&W Empowered LLC, and to his associates, *i.e.* his purported title-closer and other attorneys. (Affidavit of Damages ¶¶ 4-5.) Plaintiffs provided copies of the checks that they issued establishing the amounts sought. (*Id.* at Exhs. A-D.)

---

[4] As noted *supra*, plaintiffs asserted other common law claims. Although I have not addressed defendant's liability under these other causes of action, this is of no moment. I can find no statutory authority that would permit the recovery of attorney's fees for the remaining common law claims.

9

Plaintiffs further swear that the checks were negotiated, and none of the funds have ever been returned to their respective accounts. (*Id.* at ¶ 5.) Plaintiffs have satisfied me that their actual damages are as claimed, in the amount of $174,000—including checks both to and written at the behest of Wilson in connection with the subject properties.[5]

Punitive damages are not typically receivable under an action for fraud; however, punitive damages may be awarded if the allegations "involves 'a fraud evincing a high degree of moral turpitude' and demonstrates 'such wanton dishonesty as to imply a criminal indifference to civil obligations.'" *CSI Inv. Partners II, L.P. v. Cendant Corp.*, 507 F. Supp. 2d 384, 427 (S.D.N.Y. 2007), *aff'd* 328 Fed. Appx. 56 (2d Cir. 2009) (quoting *Manning v. Utilities Mut. Ins. Co., Inc.*, 254 F.3d 387, 400 (2d Cir.2001)); *see also Rocanova v. Equitable Life Assurance Soc'y of the U.S.*, 83 N.Y.2d 603, 614 (1994) (explaining that punitive damages are usually only available to "vindicate public rights," but noting that a private party may recover punitive damages where the claim involves fraud evincing "moral turpitude" and "wanton dishonesty").[6] Here, Wilson held

---

[5] Rule 54(c) provides: "A judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment." *See also Silge v. Merz*, 510 F.3d 157, 159-60 (2d Cir. 2007). However, a plaintiff need not specify the exact dollar figure sought as damages, so long as the complaint clearly puts the defendant on notice of what damages are at issue. In their complaint, plaintiffs demanded an amount *in excess* of the $104,000 of payments to compensate for actual damages incurred as a result of defendant's conduct. Therefore, the complaint gave Wilson notice that the amounts paid to him for the real estate investments were sought as damages, and that those amounts exceeded $104,000. *See id.* at 161 (Damages in a default judgment must be limited to an amount that would have been reasonably "evident from the face of the complaint.").

[6] In *Rocanova*, the New York Court of Appeals addressed the award of punitive damages in a breach of contract claim. *See* 83 N.Y.2d at 614. In the case of a contractual relationship, the plaintiff must also show that the defendant's conduct was aimed at the public generally. *Id.*; *New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 316 (1995). However, where a legal duty extraneous to the contract is violated, the "public harm" element need not be satisfied. *CSI Inv. Partners*, 507 F. Supp. 2d at 427 (citing *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70

himself out as a licensed New York attorney during plaintiffs' entire relationship with him—through Summer 2006, but Wilson was disbarred in February 2006. *See Matter of Wilson*, 28 A.D.3d 99 (2d Dep't 2006).[7] Wilson's repeated misrepresentations under the guise of his professional licenses warrants a finding that the fraud perpetrated against plaintiffs evinced a high degree of moral turpitude and wanton dishonesty. *See also Bseirani v. Mahshie*, 107 F.3d 2 (2d Cir. 1997) (table), *available at* 1997 WL 3632 at *3 (explaining that New York law allows an award of punitive damages "'where the wrong involves some violation of duty springing from a relation of trust or confidence', or where there is an abuse of professional status by repeated fraudulent representations") (quoting *Green v. Leibowitz*, 118 A.D.2d 756, 758 (2d Dep't 1986)). Accordingly, I respectfully recommend punitive damages be awarded as plaintiffs' request in an amount equal to their actual damages—$174,000.

## **CONCLUSION**

Based on all of the foregoing, I respectfully recommend default judgment be awarded against defendant on plaintiff's second cause of action, and that plaintiffs be awarded a total of $348,000.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court and the Honorable Nicholas G. Garaufis within fourteen days of receipt hereof. Failure to

---

N.Y.2d 382, 389 (1987)). Moreover, where no contractual relationship is alleged, plaintiff need only establish "'gross, wanton or willful fraud or other morally culpable conduct.'" *Topps Co., Inc. v. Cadbury Stani S.A.I.C.*, 380 F. Supp. 2d 250, 264 (S.D.N.Y. 2005) (quoting *Borkowski v. Borkowski*, 39 N.Y.2d 982, 982 (1976)). Plaintiffs here alleged neither the elements of a breach of contract claim, nor generally that a contractual relationship existed. Even if an implied contract existed respective to the investment deals, Wilson's misrepresentations violated his ethical duties as an attorney and licensed broker obviating the "public harm" element.

[7] Wilson was disbarred for making material misrepresentations on his application for admission.

file timely objections may waive the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989). Plaintiffs shall serve a copy of this R&R on defendant, and file proof of service within two business days.

Dated: August 26, 2011
       Brooklyn, New York

*Ramon E. Reyes, Jr.*
**Ramon E. Reyes, Jr.**
**United States Magistrate Judge**